T.C. Memo. 2014-6

UNITED STATES TAX COURT

DAVID L. CARREON, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos.  22720-11, 22729-11,          Filed January 9, 2014.
              22747-11, 22871-11.


        R determined that Ps were engaged in a civil fraud scheme and
liable for the I.R.C. sec. 6663 75% civil fraud penalty for the tax
years at issue.

        <u>Held</u>:  R did not prove by clear and convincing evidence that
Ps' underpayments were attributable to fraud.  Accordingly, Ps are
not liable for the I.R.C. sec. 6663 civil fraud penalty.


<u>Richard A. Carpenter</u> and <u>Kevan P. McLaughlin</u>, for petitioners.

<u>Monica D. Polo</u>, for respondent.

_____

        [1]Cases of the following petitioners are consolidated herewith:  David L.
Carreon, docket No. 22729-11; Bancard Solutions, LLC, docket No. 22871-11;
and Merchants Payment Processing, Inc., docket No. 22747-11.

[*2]      MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  These consolidated cases are before the Court on petitions for redetermination of four determinations by respondent, in notices of deficiency, that petitioners owe Federal income tax deficiencies for the 2005 and 2006 taxable years.[2]  Respondent determined the following Federal income tax deficiencies[3] and penalties for petitioners David L. Carreon's and Carrie Portugal Carreon's (Ms. Portugal) 2005 taxable calendar year and Mr.  Carreon's 2006 taxable calendar year as follows:

| Year | Deficiency | Penalty sec. 6663 |
|------|-----------|-------------------|
| 2005 | $54,992 | $41,244 |
| 2006 | 10,981 | 8,236 |

Respondent determined a Federal income tax deficiency and a penalty for petitioner BanCard Solutions, LLC's (Bancard Solutions) 2005 taxable fiscal year as follows:

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 (Code), as amended and in effect for the taxable years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[3]All dollar amounts are rounded to the nearest dollar unless otherwise specified.

[*3]

| Year | Deficiency | Penalty sec. 6663 |
|---|---|---|
| 7/31/2005 | $72,457 | $54,343 |

Respondent determined Federal income tax deficiencies, penalties, and an addition to tax for petitioner Merchants Payment Processing, Inc.'s (Merchants, Inc.) 2005 and 2006 taxable calendar years as follows:

| Year | Deficiency | Penalty sec. 6663 | Addition to tax sec. 6651(a)(1) |
|---|---|---|---|
| 2005 | $89,899 | $67,425 | -0- |
| 2006 | 75,074 | 56,306 | 3,754 |

**[\*4]** After concessions by petitioners and respondent,[4] the only issue for decision is whether petitioners Mr. Carreon, Bancard Solutions, and Merchants, Inc. are liable for the civil fraud penalty pursuant to section 6663(a) for the taxable years at issue.

---

[4]On December 11, 2012, the parties filed with the Court a stipulation of settled issues stating the following: (1) Mr. Carreon failed to report qualified dividend income of $355,000 and on Schedule E, Supplemental Income and Loss rents received of $9,300 for the taxable year 2005; (2) Mr. Carreon is entitled to a Schedule E depreciation deduction of $7,815, a Schedule E mortgage interest deduction of $1,366, a Schedule E other expense deduction of $22,575, itemized deductions as claimed subject to limitation based on his adjusted gross income, and exemptions as claimed subject to limitation based on his adjusted gross income for the taxable year 2005; (3) Mr. Carreon failed to report qualified dividend income of $101,000 and Schedule E rents received of $15,925 for the taxable year 2006; (4) Mr. Carreon is entitled to a Schedule E depreciation deduction of $3,908, a Schedule E mortgage interest deduction of $10,427, a Schedule E other expense deduction of $3,454, itemized deductions as claimed (subject to limitation based on his adjusted gross income), and exemptions as claimed (subject to limitation based on his adjusted gross income) for the taxable year 2006; (5) Bancard Solutions failed to report gross receipts of $215,000, the addition of which made the total gross receipts $440,040 for the 2005 taxable year; (6) Merchants, Inc. failed to report gross receipts of $270,000, the addition of which made the total gross receipts $549,352 for the 2005 taxable year; (7) Merchants, Inc. failed to report gross receipts of $202,000, the addition of which made the total gross receipts $556,467 for the 2006 taxable year; and (8) all petitioners also orally conceded at the start of their trial that if they are not found liable for the sec. 6663 civil fraud penalty, they would all be liable for the sec. 6662(a) accuracy-related penalty for all of the taxable years at issue.

[*5]                        FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties with accompanying exhibits are incorporated herein by this reference. At all relevant times throughout the years in issue, at the time the petitions in these cases were filed, and at the time of trial, petitioners resided or had their principal office in California.

General Background

Mr. Carreon graduated with a business degree from National University, where he had taken one accounting course and no tax courses. He later attended the San Diego Regional Sheriff's Department Sheriff's Academy and completed a nine-month training program. He then volunteered as a reserve deputy sheriff until 1996. In 1999 Mr. Carreon married Ms. Portugal. Throughout the 2005 and 2006 taxable years Mr. Carreon and Ms. Portugal were married.

Mr. Carreon's Businesses

In 1999 Mr. Carreon and Ms. Portugal were introduced by a mutual friend to Clementine Estrada. Ms. Estrada provided advice to Mr. Carreon and Ms. Portugal on how to set up entities for their business. Ms. Estrada also gave them advice about asset management protection and a financial strategy referred to as the "agent-principal" relationship. Mr. Carreon understood that the concept was

[*6] set up to operate by taking the net gross receipts from their credit card processing business (which, starting in 1999, they had conducted through Merchant Payment Processing L.L.C., which changed its name on December 31, 1999, to Bancard Solutions LLC) after business expenses including their salaries and put those funds into other entities such as a trust. These other entities were to be designated as a business trust, a charitable trust, and a management trust. There was also to be a "living trust" to hold and protect their property, such as their home, personal property, etc.

Additionally, Ms. Estrada explained that the management trust would be managed by a company called Builders, which would charge a fee for services of 11% of the first $70,000 of credit card processing receipts and 6% for any excess money managed beyond $70,000. Ms. Estrada also referred Mr. Carreon and Ms. Portugal to Robert Holcomb in order to hear more about the "agent-principal" relationship, since they were equal owner members of the business and Ms. Portugal was the managing member.

Mr. Holcomb elaborated on the "agent-principal" relationship to Mr. Carreon and Ms. Portugal. Mr. Holcomb described the relationship as having held up in several cases with the Internal Revenue Service (IRS) and stated that there were even tax rulings that condoned the relationship. Mr. Holcomb, like Ms.

[*7] Estrada, condoned the relationship as a legal one.  Mr. Carreon and Ms. Portugal decided to employ the "agent-principal" relationship.  Mr. Carreon and Ms. Portugal had about four meetings with Mr. Holcomb.

In 2000 Mr. Holcomb referred Mr. Carreon and two other taxpayers to John Betts, a California certified public accountant (C.P.A.).  There is no evidence in the record that, other than the three referrals, Mr. Betts had any professional or untoward business relationship with Mr. Holcomb or that they shared any fees or paid anything to one another.  Mr. Betts, at that time, had over 20 years of practice experience and had previously worked for 2 years as an IRS auditor.  Mr. Betts had no previously known professional disciplinary actions and was in good standing with the State of California.  Mr. Carreon and Ms. Portugal hired Mr. Betts for their personal and business Federal income tax preparation.  During this period they also began to use the "agent-principal" relationship.  Mr. Betts prepared Mr. Carreon and Ms. Portugal's joint Federal tax returns for the calendar years 2000 through 2005 and Bancard Solutions' Federal income tax return for the fiscal years July 31, 2000 through 2005.  Once a month Mr. Betts would receive from Mr. Carreon the QuickBooks accounts for Bancard Solutions and Merchants, Inc.  Once a month Mr. Betts would also receive from Mr. Holcomb the agent-principal relationship records in the form of the chart of accounts for Bancard

[*8] Solutions and Merchants, Inc.  Mr. Holcomb had discussed this "agent-principal" relationship with Mr. Betts and had assured him about its validity.

Bancard Solutions

On August 25, 1999, Mr. Carreon and Ms. Portugal started Merchants Payment Processing, L.L.C. (Merchants Processing).  Merchants Processing provided credit card processing services to businesses, primarily in the restaurant industry.  Bancard Solutions was taxed as a corporation for its 2005 taxable fiscal year.  Mr. Carreon and Ms. Portugal were Bancard Solutions' only members.  Mr. Carreon served as the secretary and treasurer, Ms. Portugal was the manager, and they were the only individuals with bank account signature authority.

Per his Form W-2, Wage and Tax Statement, Mr. Carreon received compensation of $12,137 from Bancard Solutions during his 2005 taxable year.  Bancard Solutions reported gross receipts of $225,040 for the taxable fiscal year ending July 31, 2005.

In the 2005 taxable fiscal year, Bancard Solutions issued and Mr. Carreon signed checks in the total amount of $159,000 to the Mission Federal Credit Union (MFCU).  Using these funds, Mr. Carreon obtained and then transferred $159,000 in cashier's checks from MFCU payable to "Builders".  Bancard Solutions issued

[*9] and Mr. Carreon signed two checks numbered 1558[5] and 2571 payable to "Builders" totaling $56,000 during the period from August 1, 2004, through March 31, 2005. Thus, Bancard Solutions transferred $215,000 which ended up in two MFCU Builders' accounts numbered 1153 and 1483. Bancard Solutions and Builders never entered into any written agreements or written contracts.

Bancard Solutions underreported its taxable income for its 2005 taxable fiscal year by the $215,000, which was paid to Builders. Had Bancard Solutions reported the $215,000, it would have incurred an additional income tax liability of $72,457 for its 2005 fiscal taxable year. On Bancard Solutions' general ledger the amounts transferred to Builders were deducted from gross income and treated, in effect, as an expense for money going to "Builders". The checks for payments to Builders were described on the memo line of the general ledger as going to "Builders", "Builders-Principle", "Principle-Builders", "Builders Principle MFCU Bank CK", "Builders/Principle", "To Principle", "Form [sic] Builders", "for Builders/ Principle", "To Principle Bank CK", or "To BUILDERS on Behalf of BANCard". In late March or early April 2005 Mr. Carreon started to use

---

[5]Respondent contends in his opening brief that this was check No. 1158, but the evidence demonstrates that it was check No. 1558.

[*10] Merchants, Inc. as the entity for his credit card service company. Bancard Solutions dissolved on March 31, 2005.

Merchants, Inc.

On December 30, 2004, Merchants, Inc. was incorporated. Mr. Holcomb was Merchants, Inc.'s incorporator. According to Merchants, Inc.'s statement of information, Mr. Carreon was the chief executive officer and chief financial officer for Merchants, Inc. Ms. Portugal served as the secretary. Mr. Carreon and Ms. Portugal held these positions during the entire 2005 and 2006 taxable years. Mr. Carreon and Ms. Portugal each owned 50% of Merchants, Inc. and were the only individuals with signature authority on its accounts.

Mr. Carreon was issued a Form W-2 from Merchants, Inc. for his 2005 taxable calendar year reflecting wage income of $32,366. Merchants, Inc. reported gross receipts of $279,352 for the 2005 calendar taxable year. For calendar year 2005 Merchants, Inc. underreported its income by $270,000, which is the amount Merchants, Inc. transferred to Builders. Merchants, Inc. underpaid its Federal income tax by $89,899 for its 2005 calendar taxable year.

During 2006 Mr. Carreon had signature control of all Merchants, Inc.'s accounts. Ms. Portugal also had signature control during this year of all the bank accounts except Merchants, Inc.'s checking account No. 5595. Mr. Carreon was

[*11] issued a Form W-2 for the 2006 taxable year from Merchants, Inc. reflecting wage income of $49,134. For its 2006 calendar year Merchants, Inc. underreported its income by $202,000, which is the amount Merchants, Inc. paid to Builders during that year. Merchants, Inc. underpaid its Federal income tax by $75,074 for its taxable calendar year 2006.

During its 2005 taxable calendar year Merchants, Inc. transferred $270,000 to MFCU and Builders by checks signed by Mr. Carreon. During its 2006 taxable calendar year Merchants, Inc. transferred $202,000 to MFCU and Builders by checks signed by Mr. Carreon. The $202,000 that went to MFCU in 2006 was used for cashier's checks payable to Builders. All $472,000 was not reported on either Merchants, Inc.'s or Mr. Carreon's Federal income tax return for the 2005 or 2006 taxable year. On Merchants, Inc.'s general ledger money going to Builders was debited, thereby reducing income. The checks for payment to Builders were described on Merchants, Inc.'s memo line of the general ledger as going to "Builders", "Builders-Principle", "Principle-Builders", "Builders Principle MFCU Bank CK", "Builders/Principle", "To Principle", "Form [sic] Builders", "For Builders/ Principle", "To Principle Bank CK", and "To BUILDERS on Behalf of BANCard". Mr. Betts prepared Merchant's, Inc.'s Federal income tax return for the 2006 taxable calendar year.

**[*12]** <u>Builders</u>

Bancard Solutions and/or Merchants, Inc. transferred portions of their income to Builders starting in 2000 and continuing through the years at issue. Mr. Carreon maintained a very detailed QuickBooks account record of transfers going to the Builders account. During the taxable years at issue Mr. Holcomb had signature authority over Builders' account.

<u>Angel High Group</u>

On March 14, 2000, Mr. Carreon and Ms. Portugal opened an account at MFCU under the account name Western Hill Valley Inc. d.b.a. Angel High Group (AHG), account no. xxxxxx405-0 (AHG 405-0 account). Mr. Carreon and Ms. Portugal each had signature authority over the AHG 405-0 account. In the calendar year 2005 Builders issued checks payable to the AHG 405-0 account totaling $342,250.

On April 24, 2006, Mr. Carreon opened an account at MFCU under the account name Western Hill Valley Inc. d.b.a. AHG, account no. xxxxxx 568-1 (AHG 568-1 account). Mr. Carreon had sole signature authority over the AHG 568-1 account. During the calendar year 2006 Builders paid $197,700 to the AHG 568-1 account. During the years at issue the AHG 568-1 account issued checks under the name "Angel High Group, David Carreon". During the taxable calendar

[*13] year 2006 Mr. Carreon paid personal expenses using funds deposited into the AHG 568-1 account. Mr. Carreon and Ms. Portugal did not report as Federal taxable income any of the amounts deposited in either the AHG 405-0 or AHG 568-1 account during the calendar years 2005 and 2006.

Boot Peak Hill

During 2006 Builders issued checks to Helping Hand, Jubilee, and Brother's Keeper totaling $55,200 which were deposited into the Boot Peak Hill (Boot) checking account No. xxxxx-x3252 (Boot 3252 account). Mr. Carreon had signature authority on the Boot 3252 account during the taxable years at issue. Mr. Carreon endorsed and deposited checks into the Boot 3252 account during the year 2006. During 2006 checks from the Boot 3252 account were issued under the name "Boot Peak Hills, David Carreon". Petitioners did not report as Federal taxable income any of the money transferred into the Boot 3252 account.

Funds in the AHG 405-0, AHG 568-1, and Boot 3252 accounts were used by Mr. Carreon and Ms. Portugal to pay some of their personal expenses during the calendar year 2006. There were no QuickBooks account entries set up for transfers going from Builders into the AHG or Boot accounts. Checks issued from the Builders accounts displayed the names "Agape", "Jubilee", and "Helping

[*14] Hand", and were deposited into either the AHG or the Boot accounts. The checks issued from Builders were signed by Mr. Holcomb.

Rental Property

Mr. Carreon and Ms. Portugal received rental income of $9,300 from jointly held property during the 2005 taxable year. Mr. Carreon deposited $9,300 into the AHG 405-0 account. Mr. Carreon and Ms. Portugal did not report the $9,300 as income on their joint Federal income tax return for the calendar year 2005.

In the 2006 calendar taxable year, Mr. Carreon and Ms. Portugal received rental income of $31,850 from their jointly held property. Mr. Carreon deposited $15,700 and $16,100[6] into the AHG 405-0 and Boot 3252 accounts, respectively. Neither Mr. Carreon nor Ms. Portugal reported any of this rental income on his or her 2006 Federal income tax return.

Mr. Carreon's Reliance on Mr. Holcomb and Mr. Betts

Mr. Betts helped maintain the QuickBooks file on a monthly basis and reconciled Mr. Carreon's, Bancard Solutions', and Merchants, Inc.'s bank accounts every month. Mr. Betts testified that to his then-current knowledge Mr. Carreon provided records sufficient to determine his tax liability. Mr. Betts also

---

[6]The parties did not indicate nor does the record reveal where the remaining $50 of rental income was transferred to.

[*15] testified that to his knowledge all of the tax returns he prepared using the "agent-principal" relationship were correct. Mr. Holcomb had discussed this "agent-principal" relationship with Mr. Betts, Mr. Carreon, and Ms. Portugal and had assured them about its validity. Mr. Carreon relied on Mr. Betts and Mr. Holcomb in his determination and review for accuracy of his Federal income tax returns for himself and for his businesses.

Procedural History

On July 12, 2011, notices of deficiency were issued to Mr. Carreon and Ms. Portugal for the 2005 taxable calendar year; to Mr. Carreon for the 2006 taxable calendar year; to Bancard Solutions for the taxable fiscal year ending July 31, 2005; and to Merchants, Inc. for the 2005 and 2006 taxable calendar years.[7] Mr. Carreon has agreed to his Federal income taxation, for 2005 and 2006, of all the constructive dividend amounts, consisting of the money deposited to Builders from Merchants, Inc. during 2005 and 2006. Merchants, Inc. has agreed to pay taxes on the full amount that was deposited into the "Builders" account from Merchants, Inc.

---

[7]A Tax Court petition was also filed by Ms. Portugal for her 2005 calendar taxable year at docket No. 22063-11, but at the request of these parties that case was severed from these consolidated cases by order of this Court dated December 10, 2012.

**[*16]**                                              OPINION

I.      Section 6663 Fraud Penalty

In any case involving the issue of fraud with intent to evade tax, the Commissioner bears the burden of proof as to that issue.  Sec. 7454(a).  That burden of proof must be carried by "clear and convincing evidence".  Rule 142(b).  Section 6663(a) imposes a penalty of "an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud."  Section 6663(b) specifies that if "any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except" to the extent "the taxpayer establishes (by a preponderance of the evidence) [that some part] is not attributable to fraud." Id.

Respondent must prove, for each year, by clear and convincing evidence that (1) petitioners underpaid their tax for that year, and (2) that some part of that underpayment for that year was due to fraud.  See  Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983).

A.      Underpayment of Tax

The first prong of the fraud test mandates that the Commissioner prove the existence of an underpayment of tax for the year.  In doing so, the Commissioner may not simply rely on the taxpayer's failure to prove error in the deficiency

[*17] determination.  DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). Petitioners and respondent have stipulated unreported income and gross receipts that result in underpayments of tax liabilities for the 2005 and 2006 taxable years. Accordingly, the Court concludes respondent has proven underpayments of tax by clear and convincing evidence.  Consequently, respondent has proved the first prong of the fraud test for both the 2005 and 2006 taxable years for each petitioner.

B.    Fraudulent Intent

To satisfy the second prong of the fraud test, the Commissioner must show that a portion of the underpayment is attributable to fraud.  The determination of whether civil fraud exists "is a question of fact to be resolved upon consideration of the entire record."  See Parks v. Commissioner, 94 T.C. at 660.  Fraud for that purpose is defined as intentional wrongdoing, with the specific purpose of avoiding a tax believed to be owed.  E.g., DiLeo v. Commissioner, 96 T.C. at 874. Although no single factor may necessarily be sufficient to establish fraud, the existence of several indicia may be persuasive circumstantial evidence of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), aff'g T.C. Memo.

[*18] 1982-603.  Mere suspicion, however, is not enough.  E.g., Katz v. Commissioner, 90 T.C. 1130, 1144 (1988).

As direct proof of a taxpayer's intent is seldom available, fraud may be established by circumstantial evidence and reasonable inference drawn from the record.  Stoltzfus v. United States, 398 F.2d 1002, 1005 (3d Cir. 1968); DiLeo v. Commissioner, 96 T.C. at 874.  Courts have developed a nonexclusive list of badges of fraud useful in determining whether there is circumstantial evidence of fraudulent intent.  Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992).  Among the badges of fraud that can be gathered from the caselaw of the Court of Appeals for the Ninth Circuit (the Court to which these cases are appealable absent a stipulation by the parties to the contrary) are the following:  (1) understatement of income, (2) inadequate maintenance of records, (3) failure to file tax returns, (4) offering implausible or inconsistent explanations of behavior, (5) concealment of income or assets, and (6) failure to cooperate with tax authorities.  See Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), aff'g T.C. Memo. 1984-601.

Other factors looked at by courts include:  engaging in illegal activities; dealing in cash; failure to make estimated payments; offering false or incredible testimony; and filing false documents.  See Niedringhaus v. Commissioner, 99

**[\*19]** T.C. at 211; Parks v. Commissioner, 94 T.C. at 664-665.  Additionally the taxpayer's background, level of education, and prior history of filing proper returns are relevant.  See Niedringhaus v. Commissioner, 99 T.C. at 202.

    C.    Second Prong of Fraud Test as Applied to Mr. Carreon

        1.    Understatement of Income

This Court has held that consistent understatements of income in substantial amounts over a number of years by knowledgeable taxpayers, standing alone, may be considered persuasive evidence of fraud.  See Otsuki v. Commissioner, 53 T.C. at 108.  Mr. Carreon conceded that he underreported income for the 2005 and 2006 tax years by $355,000 and $101,000, respectively.  However, the reason for the underreporting was Mr. Carreon's reliance on the validity of the "agent-principal" relationship.  See Alexander v. Commissioner, T.C. Memo. 2013-203, at \*44.  Mr. Carreon was assured by Mr. Holcomb and to a certain extent by his own C.P.A. Mr. Betts of the validity of the "agent-principal" relationship.[8]  While Mr. Carreon's reliance on Mr. Holcomb may not have been reasonable, his reliance was not fraudulent.  See id. (holding that relying on a promoter will not

---

[8]Mr. Betts testified that he had previously used the "agent-principal" relationship when he performed accounting services for travel agents.  The travel agents would collect the money from ticket fees and then transfer most of it to the airline, which would make the transferred portion deductible to the travel agents.

[*20] satisfy the reasonable cause defense for section 6664; however, reliance on a promoter can negate fraudulent intent for purposes of section 6663). Accordingly, this factor weighs slightly against a finding of civil fraud.

### 2. Inadequate Maintenance of Records

The failure to maintain adequate business records supports a finding of fraud. See Lollis v. Commissioner, 595 F.2d 1189, 1192 (9th Cir. 1979), aff'g T.C. Memo. 1976-15; Estate of Mazzoni v. Commissioner, 451 F.2d 197, 202 (3d Cir. 1971), aff'g T.C. Memo. 1970-37, supplemented by T.C. Memo. 1970-144. A taxpayer is required to keep records and statements sufficient to determine whether the taxpayer is liable for tax. Sec. 6001; sec. 1.6001-1, Income Tax Regs.

Mr. Carreon maintained an extensive QuickBooks file showing where his personal account, Bancard Solutions', and Merchants, Inc.'s checks and credit card transactions were being sent. The QuickBooks file was maintained to show not only where the money was going, but also the type of expense. This file was maintained by Mr. Carreon or Ms. Portugal throughout the years at issue. The QuickBooks accounts contained profit and loss statements, general ledgers, and balance sheets for petitioners.

Mr. Carreon followed detailed instructions from Mr. Holcomb on how to maintain the QuickBooks account, which did not include keeping any records or

[*21] books on the AHG or Boot bank accounts. Because of the failure to record and provide AHG or Boot bank accounts information to the Commissioner, we conclude Mr. Carreon did not clearly maintain a complete set of books. Therefore, this factor weighs slightly in favor of a finding of civil fraud.

### 3. Mr. Carreon's Tax Returns

Failure to file tax returns is a badge of fraud. See Niedringhaus v. Commissioner, 99 T.C. at 211-212. Mr. Carreon filed tax returns for the years at issue albeit up to six days late. Therefore, this factors weighs against a finding of civil fraud.

### 4. Plausible or Consistent Explanations of Behavior

Implausible or inconsistent explanations of a taxpayer's behavior can constitute circumstantial evidence of fraudulent intent. See Bradford v. Commissioner, 796 F.2d at 307. Mr. Carreon noted on the general ledger and other documents that the money transferred to Builders was going to the principal. It is apparent from the record that Mr. Carreon continually was under the impression that he was using an "agent-principal" relationship.

We are, however, suspicious of Mr. Carreon's failure to prepare any record for AHG or Boot, the use of checks with charitable-sounding names, and the too-good-to-be-true tax result obtained; but suspicious circumstances alone do not

**[\*22]** sustain a finding of fraud.  See <u>Katz v. Commissioner</u>, 90 T.C. at 1144; <u>Holmes v. Commissioner</u>, T.C. Memo. 2012-251, at \*34.  While mere suspicion would generally weigh against a determination of "good faith" under section 6664(c)(1), we are mindful that respondent must prove the elements of fraud by clear and convincing evidence, and absent persuasive evidence, we do not find that Mr. Carreon fraudulently failed to maintained adequate records.  Accordingly, this factor weighs against a finding of civil fraud.

### 5. Concealment of Income or Assets

An intent to evade tax may be inferred from concealment of assets or covering up sources of income.  See <u>Edelson v. Commissioner</u>, 829 F.2d 828, 832 (1987), <u>aff'g</u> T.C. Memo. 1986-223.  Mr. Carreon kept a general ledger with all the payments from Bancard Solutions and Merchants, Inc. to Builders; however, there was no information provided about any of the transactions after the income went to Builders and then into other accounts.  Most of this money went into accounts controlled by Mr. Carreon, which Mr. Carreon ultimately used for personal expenses.  Builders' accounts information was never disclosed to Mr. Betts, nor was it fully accounted for or ever included in petitioners' income tax returns.  Therefore, this factor weighs in favor of a finding of civil fraud.

**[*23]**     6.     <u>Cooperation With Taxing Authorities</u>

A taxpayer's failure to cooperate with revenue agents during an investigation is a badge of fraud.  <u>See</u> <u>Grosshandler v. Commissioner</u>, 75 T.C. 1, 20 (1980).  After the first meeting at Mr. Carreon's residence, which lasted almost the entire day, Mr. Peters, a revenue agent, described Mr. Carreon as "pleasant".  In response to part of the revenue agent's initial request for documents, Mr. Carreon provided the general ledgers and other requested or sought information.  In fact Mr. Carreon voluntarily extended the period of limitation to allow the audit to continue.

Mr. Carreon, however, was not helpful in establishing the links between Builders and the AHG 405-0 account, the AHG 568-1 account, and the Boot 3252 account.  The revenue agent requested documents about these transfers and never received them from Mr. Carreon.  Mr. Carreon did provide other information requested and went in person to meet with the revenue agent.  Accordingly, this factor is neutral.

7.     <u>Mr. Carreon's Engaging in Legal Activities</u>

There is no evidence that Mr. Carreon was performing any outside unlawful activities.  Accordingly, this factor weighs against a finding of civil fraud.

**[\*24]**     8.     <u>Mr. Carreon Did Not Make Cash Transfers</u>.

Dealing in cash to prevent scrutiny of a taxpayer's finances is a badge of fraud. <u>See</u> <u>Bradford v. Commissioner</u>, 796 F.2d at 307-308. Further, if a taxpayer deals in cash while attempting to conceal a transaction or avoid reporting the transaction, that conduct may be indicative of fraud. <u>See</u> <u>Valbrun v. Commissioner</u>, T.C. Memo. 2004-242, slip op. at 8-9.

Mr. Betts had testified that Bancard Solutions and Merchants, Inc. never dealt in cash. Mr. Carreon primarily used checks and credit cards in order to make payments. Mr. Carreon on occasion made large transfers using cashier's checks from Bancard Solutions and Merchants, Inc. to Builders. This Court has on occasion held that the use of cashier's checks can be a badge of fraud. <u>See</u> <u>Hamilton v. Commissioner</u>, T.C. Memo. 2004-66, slip op. at 6. In <u>Hamilton</u>, the taxpayer used cashier's checks made out to himself and did not keep an accurate record of where the cashier's checks were going. <u>See</u> <u>id.</u> In the instant case, Mr. Carreon made the cashier's checks payable to Builders, and the general ledgers had the funds going to Builders. Therefore, Mr. Carreon did not use the cashier's checks to conceal the money transfers. Accordingly, this factor weighs against a finding of civil fraud.

**[*25]**     9.     <u>No False Documents Filed</u>

Filing a document intending to conceal, mislead, or prevent the collection of tax is an indicium of civil fraud. See <u>Edelson v. Commissioner</u>, 829 F.2d at 832. Specifically, filing a false document with the IRS is an affirmative act of misrepresentation that may justify the fraud penalty. See <u>Zell v. Commissioner</u>, 763 F.2d 1139, 1146 (10th Cir. 1985) (holding false withholding certificates were evidence of fraud), <u>aff'g</u> T.C. Memo. 1984-152.

Respondent does not allege that Mr. Carreon filed any false documents with the IRS. A fictitious business name was registered for Merchants, Inc. with the State of California, but respondent did not allege that this had any bearing on Mr. Carreon's income tax. Mr. Carreon did file incorrect and thereby false returns when he did not report or disclose that Builders paid his personal expenses. Accordingly, this factor weighs in favor of a finding of civil fraud.

    10.     <u>No False or Incredible Testimony</u>

Mr. Carreon asserts when he filled out the relevant tax returns he believed that the "agent-principal" relationship described and explained by Mr. Holcomb and accepted as viable by Mr. Betts was a legal relationship that justified his tax reporting position although the Builders payments of some of his expenses were not included, or fully disclosed to Mr. Betts. Further, Mr. Carreon's course of

[*26] conduct gives credence to his belief. Respondent has failed to convincingly rebut Mr. Carreon's assertion and has failed to show the requisite specific fraudulent intent. Accordingly, this factor weighs heavily against a finding of civil fraud.

## Summary of Badges

The Court concludes three factors weigh in favor of civil fraud, one factor is neutral, and six factors weigh against civil fraud as applied to Mr. Carreon. Additionally, Mr. Carreon placed a great deal of reliance on his C.P.A. Mr. Betts and believed the agent-principal relationship complied with Federal tax law. Mr. Carreon does not possess the education or experience in tax law that would allow him to know that he should have reported the additional income. Even though the reliance on Mr. Betts and Mr. Holcomb was misplaced and three badges of fraud exist, respondent has not carried his substantial burden of proving by clear and convincing evidence that Mr. Carreon committed fraud.

Accordingly, the Court concludes that respondent has failed to prove the second prong of the fraud test with respect to Mr. Carreon for the years 2005 and 2006.

**[\*27]** D.   <u>Second Prong of Fraud Test as Applied to Bancard Solutions and Merchants, Inc.</u>

Respondent contends Bancard Solutions and Merchants, Inc. are liable for the civil fraud penalty.  Fraud must be proven by independent evidence of fraudulent intent.  <u>Toussaint v. Commissioner</u>, 743 F. 2d 309, 312 (5th Cir. 1984), <u>aff'g</u> T.C. Memo. 1984-25.  Therefore, the finding that Mr. Carreon is not liable for fraud is a separate and distinct finding.

Bancard Solutions and Merchants, Inc. conceded that they underreported their income for the years in issue.  Merchants, Inc. conceded that it underreported gross receipts for the taxable years 2005 and 2006 by $270,000 and $202,000, respectively.  Bancard Solutions conceded that it failed to report gross receipts of $215,000 for the taxable year ending July 31, 2005.  However, the reason for the underreporting was its management's reliance on the validity of the agent-principal relationship.  Mr. Carreon and Ms. Portugal were assured by Mr. Holcomb and their C.P.A. Mr. Betts of the validity of this relationship.  While Mr. Carreon and Ms. Portugal's reliance on Mr. Holcomb may not have been reasonable, their reliance was not fraudulent.  <u>See Alexander v. Commissioner</u>, at \*44, \*50.  Accordingly, this factor weighs slightly against a finding of civil fraud.

[*28]   Bancard Solutions and Merchants, Inc. kept extensive QuickBooks accounts.  Mr. Betts, petitioners' C.P.A., would help maintain the QuickBooks file on a monthly basis and reconciled Bancard Solutions' and Merchants, Inc.'s bank accounts every month for petitioners.  However, neither Bancard Solutions nor Merchants, Inc. kept details on why payments going to Builders were deductible; and those payments to Builders sometimes were used to pay their owners' personal expenses.  Therefore, this factors weighs in favor of civil fraud.

Bancard Solutions and Merchants, Inc. filed all their tax returns for the years at issue.  Therefore, this factor weighs against fraud.  Respondent does not allege that Bancard Solutions or Merchants, Inc. was engaged in any illegal activities.  Therefore, this factor weighs against a finding of civil fraud.  Respondent does not allege that Bancard Solutions or Merchants, Inc. filed any false documents with the IRS.  Therefore, this factor also weighs against a finding of civil fraud.

The Court concludes that respondent has again failed to carry his burden of establishing by clear and convincing evidence the second prong of the fraud test for the years 2005 and 2006 as applied to Bancard Solutions and Merchants, Inc.

**[*29]** II.  <u>Conclusion</u>

On the basis of the record as a whole and particularly in light of the advice provided to petitioners by Mr. Holcomb and most importantly by their C.P.A. Mr. Betts, who testified at the trial and whose testimony was credible, the Court rejects respondent's determination of the section 6663 civil fraud penalty as to any of petitioners.  Mr. Betts testified at the trial, and the Court found his testimony credible even though, as to the tax law as applied to the "agent-principal relationship," incorrect and naive.  <u>See generally</u> <u>United States v. Boyle</u>, 469 U.S. 241, 250-251 (1985).  Petitioners' decision to engage in the transaction at issue here was the result of misguided reliance on their advisers and not their intent to fraudulently evade tax.

To reflect the foregoing,

<u>Decisions will be entered under</u>

<u>Rule 155</u>.