T.C. Memo. 2019-96

UNITED STATES TAX COURT

PATRICK COMBS, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22748-14.                    Filed August 5, 2019.

Patrick Combs, pro se.

<u>Emerald G. Smith</u> and <u>Min Young Chan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined deficiencies in petitioner's

Federal income tax, section 6662(a) accuracy-related penalties, and a section

6651(a)(1) addition to tax as follows:[1]

---

[1]All section references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice

(continued...)

[*2]

| Year | Deficiency | Penalty sec. 6662(a) | Addition to tax sec. 6651(a)(1) |
|------|-----------|---------------------|-------------------------------|
| 2010 | $189,453 | $37,891 | -0- |
| 2011 | 32,713 | 6,543 | $7,546 |
| 2012 | 1,589 | 318 | -0- |

The Court has previously granted respondent's motion for partial summary judgment with respect to petitioner's taxable years 2010 and 2011.[2] After concessions, the issues remaining for decision are: (1) whether petitioner received constructive dividends from The Good Thinking Co., Inc. (Good Thinking), during 2010, 2011, and 2012 (years at issue), as respondent determined;[3] (2) whether he is liable for the section 6651(a)(1) addition to tax for failure to timely file for 2011; (3) whether he is liable for section 6662(a) accuracy-related

_____

[1](...continued)
and Procedure, unless otherwise indicated. All monetary amounts are rounded to the nearest dollar.

[2]By order dated August 2, 2018, this Court granted respondent's motion for partial summary judgment, holding that petitioner received but failed to report on Schedule E, Supplemental Income and Loss, rental income of $241,141 and $82,513 on his 2010 and 2011 returns, respectively. The Court took under advisement respondent's motion to impose a penalty under sec. 6673(a) filed April 27, 2018.

[3]In his pretrial memorandum respondent conceded, as duplicative of the constructive dividend determination, his determination that petitioner had failed to report certain gross receipts on Schedule C, Profit or Loss From Business.

**[*3]** penalties for 2010, 2011, and 2012; and (4) whether he should be subject to a penalty pursuant to section 6673(a).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. When he filed his petition, petitioner resided in California with his significant other Deanna Latson and their two children.

Petitioner is an author, a performer, and a motivational speaker. During the years at issue he performed in "one-person comedy shows" and had various speaking engagements. Compensation for these performances was generally made by checks payable to Good Thinking and deposited into Good Thinking's bank account.

**[*4]** This arrangement grew out of petitioner's dealings with Robert Holcomb.[4] Since at least 1999 Mr. Holcomb had promoted to petitioner a tax-avoidance strategy which petitioner refers to as a Private Tax Excepted Self Supporting Ministry (PTESSM). The general concept of this strategy was to shift business income to various entities which would then use the funds to pay petitioner's personal expenses.[5]

In furtherance of this strategy, on January 1, 1999, Mr. Holcomb arranged for the incorporation of Good Thinking.[6] Immediately after Good Thinking's

---

[4]In 2016 Mr. Holcomb was indicted by a grand jury in the Southern District of California on charges including tax evasion, aiding or assisting in the preparation of false returns, and making false statements to financial institutions. See Indictment, United States v. Holcomb, No. 16-CR-01408-WQH (S.D. Cal. June 16, 2016), ECF No. 1. After a jury trial he was found guilty on four counts of making a false statement to a financial institution. See Jury Verdict, Holcomb, No. 16-CR-01408-WQH (S.D. Cal. July 20, 2018), ECF No. 173. The court declared a mistrial with respect to the other charges. See Declaration of Mistrial, Holcomb, No. 16-CR-01408-WQH (S.D. Cal. July 20, 2018), ECF No. 172. Judgment was entered and Mr. Holcomb was sentenced to 46 months of imprisonment and fined $600,000. See Judgment, Holcomb, No. 16-CR-01408-WQH (S.D. Cal. Feb. 19, 2019), ECF No. 219.

[5]This tax-avoidance strategy is similar to that described in another case in which Mr. Holcomb advised the taxpayers. See Carreon v. Commissioner, T.C. Memo. 2014-6.

[6]Good Thinking was part of a web of entities that constituted or participated in the PTESSM and that were created for this purpose in accordance with Mr. Holcomb's plan. These other entities, which are referenced in the record at

(continued...)

**[*5]** incorporation, petitioner was its sole stockholder, president, chief executive officer, chief financial officer, sole director, and treasurer. Ms. Latson served as its secretary.[7]

During the years at issue, in accordance with Mr. Holcomb and petitioner's plan, the fees paid for petitioner's speaking engagements were generally made payable to an account at Bank of America under the account name Good Thinking, account No. xxxxxx2520 (GT 2520 account). Insofar as the record shows, petitioner and Ms. Latson were the only individuals with signature authority over the GT 2520 account. Petitioner and Ms. Latson were also authorized users of Good Thinking's American Express credit card account (GT credit card account).[8]

---

[6](...continued)
various places but do not seem to enter directly into respondent's determinations that presently concern us, include Builders Trust, Stillwater Trust, and Goldwater Trust. Mr. Holcomb and petitioner were generally cotrustees of these entities, and petitioner was authorized to act as an agent for each entity. The general purpose of these entities was to shift assets and income from one to the other. For instance, from 2010 to 2012 petitioner wrote checks to Builders Trust from the Good Thinking accounts.

[7]Good Thinking was dissolved in May 2012. Great Thinking LLC was created in 2011 to be its replacement. After a period during which the two entities ran concurrently, the transition between the two entities was completed in 2012. Petitioner was the fiduciary of both entities. None of the adjustments in the current proceedings relate to Good Thinking.

[8]Two other individuals, Fouade RC Dini and Lyne Inada, were also listed as
(continued...)

[*6] During the years at issue petitioner and Ms. Latson paid various expenses using the GT credit card account and funds deposited into the GT 2520 account. These expenses included airfare, payments to video rental stores, grocery stores, fast-food restaurants, and payments for other miscellaneous expenses.

Petitioner filed his Forms 1040, U.S. Individual Income Tax Return, for tax years 2010 and 2012 on time but filed his Form 1040 for 2011 (which was due April 17, 2012) on June 24, 2013. On these Forms 1040 he reported wages from Good Thinking of $13,750, $17,019, and $7,862 for 2010, 2011, and 2012, respectively.

For tax years 2010, 2011, and 2012 Good Thinking filed Forms 1120, U.S. Corporation Income Tax Return, reporting the following amounts of income and expenses:

---

[8](...continued)
authorized users of the GT credit card account. Mr. Dini charged only about $154 on the GT credit card account over the years at issue. Ms. Inada made charges on the GT credit card account similar in amount to charges made by petitioner and Ms. Latson. Although the record does not make clear the exact nature of Mr. Dini and Ms. Inada's relationship to petitioner and Good Thinking, the record does contain numerous checks written from petitioner and from Good Thinking to Ms. Inada with the memo lines on many of the checks indicating variously that the payments are for "Kids", "Babysitting", "Childcare", or similar things.

[*7]

|  | 2010 | 2011 | 2012 |
|---|---|---|---|
| Gross profits | $217,789 | $65,520 | $9,611 |
| Expenses: | | | |
| Salaries and wages | 60,288 | 56,894 | 7,500 |
| Taxes and licenses | 6,294 | 6,023 | 952 |
| Advertising | 3,359 | -0- | -0- |
| Employee benefits | 3,270 | -0- | -0- |
| Travel | 69,316 | -0- | -0- |
| Other deductions | 78,930 | 2,603 | 1,159 |
| Total | 221,457 | 65,520 | 9,611 |
| Taxable income | (3,668) | -0- | -0- |

The Internal Revenue Service (IRS) selected petitioner's and Good Thinking's returns for examination. By notice of deficiency dated July 3, 2014, the IRS adjusted Good Thinking's taxable income by disallowing, for lack of substantiation, most of the claimed deductions and by adjusting upward its gross profits for 2011 and 2012, as follows:

[*8]

|  | 2010 | 2011 | 2012 |
|---|---|---|---|
| Gross profits | $217,789 | $89,710 | $47,146 |
| Expenses: | | | |
| Salaries and wages | 13,750 | 17,000 | 7,500 |
| Taxes and licenses | -0- | -0- | -0- |
| Advertising | -0- | -0- | -0- |
| Employee benefits | -0- | -0- | -0- |
| Travel | -0- | -0- | -0- |
| Other deductions | -0- | -0- | -0- |
| Total | 13,750 | 17,000 | 7,500 |
| Taxable income | 204,039 | 72,710 | 39,646 |

By a separate notice of deficiency, also dated July 3, 2014, respondent determined that petitioner had failed to report constructive dividends attributable to personal expenses that Good Thinking had paid on his behalf of $207,707, $72,710, and $39,646 for 2010, 2011, and 2012, respectively.[9] In addition,

_____

[9]For all years at issue the IRS counted as constructive dividends those expenses that Good Thinking had reported and that the IRS had disallowed as deductions, namely $207,707 ($221,457 of reported expenses less the $13,750 allowed), $48,520 ($65,520 of reported expenses less the $17,000 allowed), and $2,111 ($9,611 of reported expenses less the $7,500 allowed) for 2010, 2011, and 2012, respectively. For 2011 and 2012 the IRS also counted as constructive dividends payments of $24,190 and $37,353, respectively, that Good Thinking had made on its GT credit card account. Good Thinking had neither included these latter amounts in its gross proceeds nor claimed any deduction for these amounts on its corporate returns for 2011 and 2012. In the notice of deficiency issued to

(continued...)

**[*9]** respondent determined that for each year at issue petitioner was liable for an accuracy-related penalty under section 6662(a) as a result of one or more of (1) negligence or disregard of rules or regulations, (2) a substantial understatement of income tax, or (3) a substantial valuation overstatement.

The record includes a Civil Penalty Approval Form, dated May 14, 2014, and signed by the IRS examiner's group manager on May 23, 2014, for the assertion of accuracy-related penalties under section 6662(a) for negligence. There was no formal communication of penalties giving petitioner the right to protest them or challenge them in court before the notice of deficiency.

OPINION

I.  Burden of Proof

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer generally bears the burden of proving those determinations erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[10]

---

⁹(...continued)
Good Thinking, respondent determined that these amounts should have been included in Good Thinking's gross proceeds.

¹⁰Under sec. 7491(a) if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper income tax liability,
(continued...)

**[*10]** II. <u>Constructive Dividends</u>

Respondent determined that petitioner received from Good Thinking constructive dividends attributable to personal expenses that Good Thinking paid on his behalf. Respondent's determination of constructive dividends is a determination of unreported income. See <u>Pac. Mgmt. Grp. v. Commissioner</u>, T.C. Memo. 2018-131, at *64. The Court of Appeals for the Ninth Circuit, to which any appeal in this case would ordinarily lie, <u>see</u> sec. 7482(b)(1)(A), has held that the Commissioner must establish "some evidentiary foundation" linking the taxpayer to an alleged income-producing activity, <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358, 361-362 (9th Cir. 1979), <u>rev'g</u> 67 T.C. 672 (1977). Once the Commissioner has established such a foundation, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the IRS' determinations are arbitrary or erroneous. See <u>Hardy v. Commissioner</u>, 181 F.3d 1002, 1004 (9th Cir. 1999), <u>aff'g</u> T.C. Memo. 1997-97.

Respondent has established a sufficient evidentiary foundation to satisfy any threshold burden. The evidence shows that petitioner owned 100% of Good

---

[10](...continued)
and if certain conditions are met, the burden of proof shifts to the Commissioner. <u>See also</u> Rule 142(a)(2). Petitioner does not contend, and the record does not establish, that the burden of proof should shift pursuant to sec. 7491(a).

[*11] Thinking and maintained authority over its checking and credit card accounts. He was integrally linked to--apparently the sole source of--its income-producing activity. The record shows that respondent's determination is based on an extensive review of both petitioner's and Good Thinking's activities, bank accounts, and other financial accounts. Respondent introduced evidence to show that Good Thinking made significant expenditures primarily for petitioner's benefit.

Sections 301 and 316 govern the characterization, for Federal income tax purposes, of corporate distributions of property to shareholders. If the distributing corporation has sufficient earnings and profits (E&P), the distribution is a dividend that the shareholder must include in gross income. Secs. 301(c)(1), 316. If the distribution exceeds the corporation's E&P, the excess generally represents a nontaxable return of capital to the extent of the shareholder's basis in the corporation, and any remaining amount is taxable to the shareholder as a gain from the sale or exchange of property. Sec. 301(c)(2) and (3); Truesdell v. Commissioner, 89 T.C. 1280, 1295-1298 (1987).

Petitioner bears the burden of proving that Good Thinking lacked sufficient E&P to support dividend treatment at the shareholder level. See Truesdell v. Commissioner, 89 T.C. at 1295-1296; Fazzio v. Commissioner, T.C. Memo. 1991-

**[\*12]** 130, aff'd, 959 F.2d 630 (6th Cir. 1992); Zalewski v. Commissioner, T.C. Memo. 1988-340; Delgado v. Commissioner, T.C. Memo. 1988-66.  If neither party presents evidence as to the distributing corporation's E&P, the taxpayer has not met his burden of proof.  Truesdell v. Commissioner, 89 T.C. at 1295-1296; Vlach v. Commissioner, T.C. Memo. 2013-116, at \*33 n.38.

Petitioner produced no evidence concerning Good Thinking's E&P during the years at issue and has thus failed to meet his burden of proving that there were insufficient E&P to support respondent's determinations of constructive dividends to petitioner.  See Truesdell v. Commissioner, 89 T.C. at 1295-1296; Pac. Mgmt. Grp. v. Commissioner, at \*65-\*66.  We therefore deem Good Thinking to have had sufficient E&P in each year to support dividend treatment.

Characterization of a distribution as a dividend does not depend upon a formal dividend declaration.  See Boulware v. United States, 552 U.S. 421, 429-430 (2008); Truesdell v. Commissioner, 89 T.C. at 1295; see also Noble v. Commissioner, 368 F.2d 439, 442 (9th Cir. 1966), aff'g T.C. Memo. 1965-84.  Dividends may be formally declared or constructive.  A constructive dividend is an economic benefit conferred upon a shareholder by a corporation without expectation of repayment.  Truesdell v. Commissioner, 89 T.C. at 1295.  Corporate funds that a controlling shareholder diverts to personal use are generally

[*13] characterized for tax purposes as constructive distributions to the shareholder.  See Erickson v. Commissioner, 598 F.2d 525, 531 (9th Cir. 1979), aff'g in part, rev'g in part T.C. Memo. 1976-147.  Such a diversion may occur, for example, where a corporation makes a distribution to a controlling shareholder that results in an economic benefit to the shareholder but serves no legitimate corporate purpose.  See Meridian Wood Prods. Co. v. United States, 725 F.2d 1183, 1191 (9th Cir. 1984).  Such a diversion may also occur where a controlling shareholder causes a corporation to pay his or her personal expense for the shareholder's primary benefit and without expectation of repayment.  See Hood v. Commissioner, 115 T.C. 172, 179-180 (2000).  A distribution does not escape taxation as a dividend simply because the shareholder did not personally receive the property.  Sammons v. United States, 433 F.2d 728, 730 (5th Cir. 1970); see also Sparks Nugget, Inc. v. Commissioner, T.C. Memo. 1970-74, aff'd, 458 F.2d 631 (9th Cir. 1972).  Rather, "it is the power to dispose of income and the exercise of that power that determines whether * * * [a dividend] has been received."  Sammons, 433 F.2d at 732; see also Helvering v. Horst, 311 U.S. 112 (1940); Clark v. Commissioner, 266 F.2d 698, 713 (9th Cir. 1959), aff'g on this issue and remanding T.C. Memo. 1957-129.  Whether corporate expenditures are disguised dividends presents a question of fact.  See Pittman v. Commissioner, 100 F.3d

**[\*14]** 1308, 1313-1314 (7th Cir. 1996), aff'g T.C. Memo. 1995-243; Hood v. Commissioner, 115 T.C. at 180.

The Court of Appeals for the Ninth Circuit has enunciated a two-part test for determining constructive dividends: "Corporate expenditures constitute constructive dividends only if 1) the expenditures do not give rise to a deduction on behalf of the corporation, and 2) the expenditures create 'economic gain, benefit, or income to the owner-taxpayer.'" P.R. Farms, Inc. v. Commissioner, 820 F.2d 1084, 1088 (9th Cir. 1987) (quoting Meridian Wood Prods. Co., 725 F.2d at 1191), aff'g T.C. Memo. 1984-549; see also Erickson v. Commissioner, 598 F.2d at 531.

As we observed in Falsetti v. Commissioner, 85 T.C. 332, 357 (1985):

> Often the Court will have before it both the individual shareholder and the corporation so that application of the two-part test is a relatively simple matter.  However, Tax Court jurisdiction is dependent upon timely filed petitions by both the individual shareholder and the corporation.  Thus * * * application of the Ninth Circuit's constructive dividend rule is complicated when only one of the parties is before the Court, a circumstance beyond our control. * * *

Similarly in this case, because only petitioner and not Good Thinking is before the Court, we "proceed as best we can on the record before us."  Id.

[*15] For all years at issue respondent determined the amount of constructive dividends on the basis of Good Thinking's disallowed claimed deductions and, for 2011 and 2012, also on the basis of additional charges made on the GT credit card account. Petitioner claims that many of these expenditures and charges represent legitimate business expenses of Good Thinking.

Petitioner offered into evidence, without meaningful explanation, hundreds of pages of photocopied receipts, expense ledgers, spreadsheets, and various other unsorted documentation. These materials are not linked in any meaningful way to respondent's adjustments. At trial petitioner attempted selectively to link a very few of these items to deductible expenses of Good Thinking. We did not find his testimony as to these few items credible or adequate to show that any particular item represented an ordinary and necessary business expense of Good Thinking.[11]

---

[11]For instance, acknowledging that he was "a little slow" on the difference between debits and credits on the GT 2520 account statement, petitioner got it backwards and claimed that certain bank statement credits (i.e., increases to the account balance) represented expenses. As another example, petitioner pointed to certain Good Thinking checks that were written in 2009; we see no basis for concluding that these checks represent ordinary and necessary expenses for 2010, 2011, or 2012. He also claimed that Good Thinking had made certain charitable contributions but offered no contemporaneous documentation as required by sec. 170(f)(8). He also pointed to a few other photocopied canceled checks--made out variously to a phone company, an internet provider, a publishing house, a video production company, a college, and a law firm and totaling about $2,249--but offered no invoices or contracts to show that these checks represented ordinary

(continued...)

**[\*16]** In fact, petitioner conceded at trial that certain categories of expenses reported by Good Thinking--such as for child care--were not allowable business expenses. Particularly in the light of this concession, we need not and shall not undertake the task of sorting through petitioner's voluminous evidence in an attempt to determine deductible business expenses of Good Thinking. See Hale v. Commissioner, T.C. Memo. 2010-229; Patterson v. Commissioner, T.C. Memo. 1979-362.

In sum, petitioner's voluminous documentation, in which personal living expenses are not clearly distinguished from legitimate business expenses, provides us no reasonable means of estimating or determining which if any of the expenditures in question were incurred as ordinary and necessary business expenses of Good Thinking for the years at issue.

Because petitioner has failed to show that the expenditures in question properly gave rise to deductions on behalf of Good Thinking, the remaining question is whether these expenditures created "economic gain, benefit, or income to the owner-taxpayer." P.R. Farms, Inc. v. Commissioner, 820 F.2d at 1088

---

[11](...continued)
and necessary business expenses of Good Thinking. Our skepticism on this score is heightened by petitioner and Mr. Holcomb's tax-avoidance strategy of having Good Thinking deduct petitioner's personal living expenses as business expenses.

[*17] (quoting Meridian Wood Prods. Co., 725 F.2d at 1191). The expenditures in question show a pattern of payment of personal expenses, for items such as child care, clothing, groceries, and fast-food restaurants. This pattern is consistent with petitioner's tax-avoidance strategy, as devised by Mr. Holcomb, to have Good Thinking deduct petitioner's personal living expenses as business expenses.

Petitioner has not identified any category of challenged corporate expenses that did not benefit him personally. Instead, he has resorted to groundless and frivolous arguments. As has been often observed, "[w]e perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit." Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984).

We sustain respondent's determinations that petitioner received and failed to report constructive dividends of $207,707, $72,710, and $39,646 for 2010, 2011, and 2012, respectively.

III. Section 6651(a)(1) Addition to Tax

Respondent determined that petitioner is liable for a section 6651(a)(1) addition to tax for failing to file his 2011 Federal income tax return on time. Section 6651(a)(1) provides for an addition to tax for failure to file a return by the date prescribed unless the taxpayer establishes that the failure is due to reasonable

**[\*18]** cause and not willful neglect. The Commissioner bears the burden of production with respect to whether it is appropriate to impose the section 6651(a)(1) addition to tax, see sec. 7491(c), and the burden of proof is on the taxpayer to establish reasonable cause and the absence of willful neglect, United States v. Boyle, 469 U.S. 241, 245 (1985). Reasonable cause exists when a taxpayer exercises ordinary business care and prudence and is nonetheless unable to file his return by the date prescribed by law. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect connotes "conscious, intentional failure or reckless indifference." Boyle, 469 U.S. at 245.

Petitioner's 2011 tax return was due April 17, 2012. It was filed June 24, 2013. Respondent has met his burden of production. Petitioner failed to show reasonable cause for not timely filing his 2011 tax return. We sustain respondent's determination of the section 6651(a)(1) addition to tax.

IV. Section 6662(a) Accuracy-Related Penalties

Respondent determined that for each year at issue petitioner is liable for a 20% accuracy-related penalty pursuant to section 6662(a). Under section 7491(c), respondent bears the burden of production with respect to the section 6662(a) penalty. Generally, this means that he must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. See Higbee v.

[*19] Commissioner, 116 T.C. 438, 446 (2001). The Commissioner's burden of production under section 7491(c) includes establishing compliance with the supervisory approval requirement of section 6751(b). Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016). Once the Commissioner has met his burden of production, the burden of proof is upon the taxpayer to show that he is not liable for the penalty. See Higbee v. Commissioner, 116 T.C. at 449. The taxpayer may meet this burden by proving that he acted with reasonable cause and in good faith with regard to the underpayment. See sec. 6664(c)(1).

Section 6662(a) imposes a penalty of 20% of the portion of any underpayment attributable to, among other things, negligence or disregard of rules or regulations. See sec. 6662(b)(1). Negligence includes the failure to make a reasonable attempt to comply with the provisions of the Code and also includes any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. The evidence shows that petitioner has failed to make a reasonable attempt to comply with the provisions of the Code and failed to keep adequate books and records, instead espousing various frivolous and groundless arguments. The record includes a Civil Penalty Approval Form for the accuracy-related negligence penalties, signed by the IRS

[*20] examiner's group manager before the first formal communication of penalties, in the notice of deficiency, giving petitioner the right to challenge them. See Rose v. Commissioner, T.C. Memo. 2019-73, at *40; cf. Clay v. Commissioner, 152 T.C. ___, ___ (slip op. at 44) (Apr. 24, 2019). We hold that respondent has satisfied his burden of production, including his burden pursuant to section 6751(b)(1), with respect to the section 6662 accuracy-related penalties for negligence.[12]

Reasonable cause requires that the taxpayer exercise ordinary business care and prudence as to the disputed item. Boyle, 469 U.S. at 246. The term "good faith" has no precise definition but connotes, among other things, (1) an honest belief and (2) the intent to perform all lawful obligations. Sampson v. Commissioner, T.C. Memo. 2013-212, at *18. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all facts and circumstances. Higbee v. Commissioner, 116 T.C. at 448; sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess the proper tax

---

[12]Because we conclude that respondent has met his burden of production for imposing penalties based on negligence, and we sustain the sec. 6662(a) penalties on that ground, we need not consider whether respondent has met his burden of production with respect to the accuracy-related penalties as to any other ground.

**[\*21]** liability. Sec. 1.6664-4(b)(1), Income Tax Regs. Other circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in the light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer. Higbee v. Commissioner, 116 T.C. at 449; Sampson v. Commissioner, at \*18; sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner has failed to establish that he acted with reasonable cause and in good faith. To the contrary, the record convinces us that he purposefully participated in a scheme to reduce his income tax by improperly treating personal living expenses as business deductions. Accordingly, we sustain respondent's determination that petitioner is liable for accuracy-related penalties for negligence for 2010, 2011, and 2012.

## V. Section 6673 Penalty

Section 6673(a)(1) authorizes the Tax Court to require a taxpayer to pay to the United States a penalty of up to $25,000 when it appears that the taxpayer instituted or maintained proceedings primarily for delay, that the taxpayer's position in such proceedings is frivolous or groundless, or that the taxpayer unreasonably failed to pursue available administrative remedies. See Burke v. Commissioner, 124 T.C. 189, 197 (2005).

[*22] Throughout these proceedings petitioner has advanced frivolous and groundless positions.[13] He has been warned repeatedly about the possibility of a penalty under section 6673(a). Nevertheless, he has persisted in his misguided course of conduct, causing this Court and respondent to waste significant time and resources. It appears to the Court that petitioner's position in this proceeding is frivolous and groundless and that he has instituted and maintained these proceedings primarily for delay. Consequently, we will grant respondent's motion and will require petitioner to pay to the United States a penalty of $2,500 pursuant to section 6673(a)(1).

To reflect respondent's concession and the Court's August 2, 2018, order,

<u>Decision will be entered under</u>

<u>Rule 155</u>.

---

[13]Petitioner's various filings include arguments that: as a result of the PTESSM he is a "kept Man" benefiting from the "Artistic Patronage" of Mr. Holcomb; any taxes due are the sole responsibility of Mr. Holcomb; petitioner is not a "U.S. franchised 14th [A]mendment citizen" or a "U.S. resident" or a "person" within the meaning of Federal statutes; and this Court and its officers are "benefiting financially" from a "securitized document package" listed under petitioner's name and case number. At trial petitioner repeatedly invoked his reliance on the PTESSM strategy and offered into evidence a letter from Mr. Holcomb espousing frivolous and groundless claims; petitioner testified that the letter "mirrors my mindset of exactly what my situation is and my relationship with Mr. Holcomb and the PTESSM."